IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ESTATE OF SALVADOR MORALES ORSINI, et al., <br><br>Plaintiffs, <br><br>v. <br><br>DOCTORS' CENTER HOSPITAL, et al., <br><br>Defendants. | CIVIL NO. 18-1911 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiffs are members of the Estate of Salvador Morales Orsini, who bring this medical malpractice case for treatment rendered to their late father ("Mr. Morales"), which is comprised of his children, Salvador Morales, Priscilla Morales, Emmanuel Morales, and Amalia Reyes (collectively, "Plaintiffs"). Defendants are Doctors' Center Hospital (the "Hospital"), Dr. Félix Maldonado Trinidad ("Dr. Maldonado"), Dr. Jorge González Barreto ("Dr. González"), and their insurance carrier, Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria ("SIMED", collectively, "Defendants").

Plaintiffs filed the present case alleging violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd, *et seq*, as well as bringing claims for negligence and vicarious liability under Puerto Rico law for Defendants' treatment of Mr. Morales. Specifically, Plaintiffs filed a damages claim against all Defendants under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann.

tit. 31, § 5141 (1930), and included a personal claim for their own pain and suffering as well as an inherited claim for the pain and suffering their father underwent before his demise. The Complaint also contains a cause of action for vicarious liability against the Hospital under Puerto Rico Civil Code Article 1803, P.R. Laws Ann. tit. 31, § 5142 (1930).[1] (Docket No. 1). Plaintiffs later voluntarily dismissed their EMTALA claim, leaving alive only the claims under Puerto Rico law. (Docket Nos. 41 and 42).

In essence, Plaintiffs aver that their father, a retired veteran who previously suffered from Post-Traumatic Stress Disorder and from depression, was taken by a friend to the Hospital's Emergency Room on January 19, 2017, after attempting to take his life. He was seen first by Dr. Maldonado and later by Dr. González. He was kept overnight and discharged the following day, as Dr. González found he did not present the criteria necessary for an involuntary admission and Dr. Maldonado opined he had had no suicidal ideas and was feeling better. Mr. Morales died by suicide one (1) day after he was discharged from the Hospital.

Before the Court now is Defendants' "Motion For Summary Judgment & Memorandum of Law in Support Thereof" (Docket No. 54), Plaintiffs' Opposition thereto (Docket No. 62), Defendants' Reply (Docket No. 68), and Plaintiffs' Sur-Reply (Docket No. 75).

For the reasons explained below, the Court GRANTS Defendants' Motion for Summary Judgment, and DISMISSES WITH PREJUDICE this case.

---

[1] The Puerto Rico Civil Code was amended in November 2020. The actions in the present case occurred when the previous Code was still in effect, so the Court analyzes the issues in this case under the provisions of the old Code. See P.R. Laws Ann., tit. 31 § 11720 (2020).

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 3 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 3
_____

**STANDARD**

Summary judgment is appropriate if "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (a) and (c). Pursuant to the explicit language of the rule, the moving party must establish this two-fold element. Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed material if it could potentially affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in

numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must then "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts" via a short and concise statement. Loc. Rule 56 (c). If they so wish, they may submit a separate statement of additional facts.

Time and again, the Court of Appeals for the First Circuit has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-26 (D.P.R. 2012). Facts which are properly supported "shall be deemed admitted unless properly controverted" and the Court is free to ignore such facts that are not properly supported. Loc. Rule 56(e); Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448 (1st Cir. 2022).

## UNCONTESTED FACTS[2]

1. Mr. Morales was a 71-year-old veteran who had a 100% Veteran's Administration compensation due to a preexisting emotional condition. (Docket No. 1, ¶ 27; D. Exhibit 1, pp. 82-84).

2. Mr. Morales was receiving treatment from psychiatrist Dr. Julio Mojica Sandoz on an outpatient basis since 1991. (Docket No. 1, ¶ 27; D. Exhibit 1, p. 84).

3. According to the medical records from the Hospital, on January 19, 2017, Mr. Morales ingested sixteen (16) tablets of the benzodiazepine Xanax in a suicidal attempt. (D. Exhibit 2, p. 1).

---

[2] Plaintiffs submitted a separate statement of facts which they proffer are uncontested, but the Court finds they are not material for purposes of resolving the controversy currently before the Court. (Docket No. 61). For this reason, the Court did not consider them.

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 5 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 5
_____

4. After taking the Xanax, Mr. Morales was taken by his cousin, Jorge Pabón, to the Hospital's Emergency Room. (D. Exhibit 1, p. 46).

5. At the Emergency Room, Mr. Morales was evaluated by Dr. Maldonado, who ordered a Brain CT Scan and the results were reported to be within normal limits. (D. Exhibit 2, p. 2, 5, 8 & 15).

6. During the visit to the Emergency Room and as part of his assessment, Dr. Maldonado consulted with Dr. González for a psychiatric evaluation. (D. Exhibit 2, p. 8, 12-16).

7. As a result of his evaluation, Dr. González found Mr. Morales to be under the effects of medication and decided to keep him at the Emergency Room until the next day, at which time he would be reevaluated. (D. Exhibit 2, p. 16).

8. On January 20, 2017, Dr. González reevaluated Mr. Morales and found him to be alert, oriented, calm; with better introversion; had the will to live; and without suicidal and/or homicidal ideas. (D. Exhibit 2, pp. 17-19).

9. The medical note for the reevaluation of January 20, 2017, states as follows: "71 y/o reevaluated today. The patient alert, ox3, coop, logical, coherent, with good insight about seriousness of his self-destructive behavior, apologetic about it, with desires to live, looking forward to prioritize on self, continue outpatient follow up next week with his psych. The patient able to contract for safety, no suicidal ideas, no homicidal ideas, calm, polite, reluctant to consider inpatient tx, and with no criteria at this time for involuntary admission. The patient with improved insight about need to set limits on others, avoid conflicts, and care of self. Given support and encouragement." (D. Exhibit 2, p. 17).

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 6 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 6
_____

10. Dr. González discharged Mr. Morales on January 20, 2017, and recommended he follow up with his outpatient psychiatrist. (D. Exhibit 2, p. 18).

11. The next day, January 21, 2017, Mr. Morales died by suicide by hanging himself in his backyard. (D. Exhibit 1, p. 28-30).

12. Plaintiffs allege that their father was negligently discharged from the Hospital's Emergency Room, and that this alleged failure was the direct cause of Mr. Morales taking his life the day after his discharge. (Docket No. 1, ¶¶ 3, 85 and 86).

## LEGAL ANALYSIS

Defendants assert in their dispositive motion that Plaintiffs' claims under Articles 1802 and 1803 should be dismissed because under Puerto Rico law, a death by suicide is not a tortuous death that is transferable or can be inherited under Article 1802. They argue this outcome is mandated by this District Court's previous rulings in Caraballo v. Hosp. Pavía Hato Rey, 377 F.Supp.3d 99 (2019) and Oquendo Díaz, et al, v. Mennonite General Hospital, Inc., et al, Civ. Num. 16-1500 (CVR), 2019 WL 13094748 (D.P.R. Oct. 22, 2019), which found that a death by suicide is not compensable under Article 1802. Consequently, Defendants move the Court to dismiss this case based on those holdings.

In contrast, Plaintiffs aver that the holdings in Caraballo and Oquendo must be revisited, as they are based on the Puerto Rico Supreme Court's ruling in Widow of Delgado v. Boston Insurance Co., 101 D.P.R. 598 (1973), which Defendants allegedly misconstrue. Plaintiffs also attempt to distinguish Caraballo and Oquendo's facts from the present case, arguing that the Hospital was on notice that Mr. Morales had a previous suicidal attempt and this created a heightened duty of care. They also proffer that their claims can lie pursuant to one of the exceptions that allows damages in death by suicide

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 7 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 7
_____

cases, and allege issues of fact remain regarding the treatment provided by the Hospital to Mr. Morales.

Article 1802 provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141 (1930). To prevail under this theory, a plaintiff must show "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez–Filippetti v. Banco Popular De P.R., 504 F.3d 43, 49 (1st Cir.2007); Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, 671 F.3d 49 (1st Cir. 2012). Article 1803 of Puerto Rico's Civil Code, in turn, states that "[o]wners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." P.R. Laws Ann. tit. 31, § 5142 (1930); Vernet v. Torres, 740 F.Supp.2d 280, 286-87 (D.P.R. 2010).

Defendants are correct in their statement that this District Court has previously held that damages cannot be claimed under Article 1802 when the death is by suicide in Caraballo and Oquendo. Caraballo held that, under Puerto Rico law, heirs have no right to claim personal damages for the pain and suffering endured by the decedent when the cause of death is suicide. Caraballo, 377 F.Supp.3d at 124. In so doing, Caraballo reasoned that "under applicable precedents of Art. 1802, the heirs of the person that took her own life or committed suicide do not inherit a personal damages cause of action, as to the victim. A suicide death is a self-inflicted action taken voluntarily by Mrs. Caraballo who was the person that ultimately made this tragic decision … In sum, from the moment

that Mrs. Natividad Caraballo made her final decision to take her own life, and executed her plan, from that moment Mrs. Caraballo cut off any rights that may be transferred to her heirs, as a suicidal death is not a tortuous death that is transferable to third parties under Art. 1802." Caraballo, 377 F.Supp.3d at 112, 124. The Court reached this conclusion because it found Mrs. Caraballo's death was the result of a personal decision taken exclusively by her, instead of a tortuous action of another as required under Article 1802. Id. Thus, her actions broke the causal chain and there was no responsible third party, insofar as Puerto Rico law only recognizes fault or negligence when a given person's "act or omission causes damage to another" and her demise was caused solely by her own hand. P.R. Laws Ann. tit. 31, § 5141 (1930); Caraballo, 377 F.Supp.3d at 112.

In Oquendo, the undersigned extended Caraballo's reach, finding that holding was actually two-fold, and Plaintiffs were precluded from inheriting the decedent's cause of action as well as their own claim. Oquendo, 2019 WL 13094748, at *14. The undersigned so found for the same reasons stated in Caraballo, to wit, there was no proximate cause, as the death was caused by a personal action that was voluntarily inflicted and was not the result of any negligent action by a third party.

In Plaintiffs' Opposition, they attempt to distinguish the facts herein from those in Caraballo and Oquendo on several fronts. However, they falter because both cases are more akin to the present case than Plaintiffs believe.

Plaintiffs first contend that the decedent in Caraballo was brought into the psychiatric ward of Pavía Hospital because of a nervous condition and not because of a suicide attempt as in the case at bar. Caraballo, however, indicated that the decedent was taken by her children to that particular ward precisely because she had previously

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 9 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 9
_____

attempted to take her life.  Caraballo, 377 F.Supp.3d at 101.  Therefore, both victims suffered from a psychiatric condition and had a history of suicidal episodes.

Further factual similarities between the cases lie in the fact that Pavía Hospital discharged Mrs. Caraballo "convinced that Natividad did not meet the criteria for admission to the stabilization unit, and discharged her with instructions that she take her meds [medications] and attend an appointment at an outpatient clinic with APS Healthcare of Puerto Rico scheduled for October 3 [2012]."  Caraballo, 377 F.Supp.3d at 112, n. 10.

Similarly, the physician in Oquendo found the decedent did not meet the criteria for admission.  Oquendo, 2019 WL 13094748, at 6.  In much the same fashion, Plaintiffs herein allege in their Complaint that Dr. González found that Mr. Morales "did not present the criteria necessary for an involuntary admission", and discharged him, with a recommendation that he follow up with his outpatient psychiatrist. (Docket No. 1, ¶ 43).

Plaintiffs also attempt to distinguish Caraballo's facts on the basis of the time difference in the discharge.  They proffer that Mrs. Caraballo took her life three (3) days after she was released from the hospital, whereas in the present case, Mr. Morales took his life the next day.  The Court clarifies that Mrs. Caraballo took her life three (3) days after her release from the hospital, but in between her discharge and her death, she attended an appointment at APS mental health clinic.  Mrs. Caraballo was evaluated at APS by a mental health professional, was told to continue taking her medications and scheduled a follow up appointment, and she then took her own life the day after.[3]

---

[3] To be clear, Mrs. Caraballo was discharged from the hospital on October 1st, attended the appointment at APS Clinic on October 3, 2012, and died by suicide on October 4, 2012.

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 10 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 10
_____

Caraballo, 377 F.Supp.3d at 117. The Oquendo factual scenario was the same, insofar the victim died by suicide the day after he was discharged. There is no difference between these cases as to this particular fact.

Plaintiffs then argue that the Caraballo Court's analysis, which cited Widow of Delgado, is flawed because that case did not hold that the heirs of a malpractice victim who later died by suicide were precluded from bringing an inherited claim. The decedent in Widow of Delgado suffered severe burns as a result of a gasoline explosion caused by third party negligence and died three (3) days later. Widow of Delgado, 101 D.P.R. at 599. Plaintiffs in that case were awarded compensation for their own pain and suffering, but the complaint contained an additional claim for the suffering the decedent had undergone prior to his death, or the inherited claim. Id. The Puerto Rico Supreme Court was tasked with determining whether the heirs of the decedent could be compensated for such a claim. Id.

The Widow of Delgado Court analyzed the nature of personal versus hereditary actions, explaining along the way the difference between the two. Id., at 602. The Civil Code traditionally labeled "personal" actions ("acciones personalísimas") as those which ended with a person's death and were not inheritable or transferable. Id. Some of these included the right of usufruct, life rent, legal custody, alimony, and mandate, among others. Id., at 603. In contrast, actions which were hereditary in nature ("derechos patrimoniales") were capable of being inherited precisely because they did not end with the person's death but rather, began at that precise moment. Id., at 604. The Supreme Court noted that the restorative civil action ("acción civil reparadora") in question, the decedent's pain and suffering, was by definition a uniquely personal action, but was not

on the list of personal actions that ended with the person's death. Id. The Court nevertheless reasoned that a decedent's patrimony is comprised of all his rights and obligations which are economically quantifiable, and that a person's pain and suffering likewise has monetary value. Id., at 605. For this reason, the Supreme Court concluded such pain was compensable, finding there was no good reason to exclude this particular cause of action from being passed to the heirs. Id. Widow of Delgado consequently stands for the general rule that an inherited claim for the decedent's pain and suffering is patrimonial, not personal in nature, and consequently capable of being passed on to the decedent's heirs. Id., at 607.

Plaintiffs proffer that the Caraballo Court misinterpreted Widow of Delgado's holding when it cited that case for its conclusion that the deceased's pain and suffering is not inherited. Plaintiffs' reading of the Caraballo holding is misplaced. Widow of Delgado is distinguishable mainly because it did not involve malpractice or suicide. On the contrary, the damage there was directly caused by a third party, thus making Article 1802 directly applicable to that case. In that sense, Widow of Delgado's very limited holding was simply that, in a garden variety tort cases, the decedent's heirs have an inherited claim for the decedent's pain and suffering in addition to their own, personal claim, nothing more. It said nothing about the *source* of that damage, focusing its analysis instead on the *recipient* of the eventual benefit and explaining its reasoning in allowing the inherited claim to be redressed, pursuant to our longstanding civil law tradition.

In contrast, Caraballo's holding stems not from the benefit's recipient, but rather, from the source of the tort itself. Unlike Widow of Delgado, Caraballo's eventual outcome did not come about due to any third party's action, but instead due to the decedent's own

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 12 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 12
_____

choice, an act which made it a personal claim, as opposed to a patrimonial claim capable of being passed on. Since there was no action or negligence by a third party in a self-inflicted action, the Caraballo Court held nothing could be inherited or transmitted. Thus, the distinction the Caraballo Court made was that in a normal Article 1802 case, the deceased's pain and suffering is personal and can be inherited, except when the death occurs by suicide.

This holding was then adopted by the undersigned in Oquendo, finding that the heirs likewise had no cause of action of their own to exercise because the same rationale applies to both an inherited and a personal claim. In a case of self-inflicted harm, under both scenarios no negligence exists that can be attributed to a third party, so there is no causal link that ties any third party to the resulting death. Oquendo, 2019 WL 13094748, at *14; P.R. Laws Ann. tit. 31, § 5141 (1930) (imposing liability upon a person who by an act or omission causes damage *to another*) (emphasis added).

Plaintiffs then cite to Ramírez v. ELA, 140 D.P.R. 385 (1996) for the proposition that Puerto Rico law contains two (2) exceptions to the rule that no damages can be claimed in a death by suicide. In so doing, Plaintiffs recognize that Puerto Rico law generally bars compensation in such cases.[4] The first exception occurs when a defendant's actions provoke the death by suicide, and the second arises when the defendant has failed to take measures that could have prevented the death. Plaintiffs proffer that the second exception applies in this case because the Hospital failed to appropriately screen and treat Mr. Morales. While Ramírez does discuss these two

---

[4] Ramírez clearly so stated when it held that "common law, in which the Court of First Instance based its judgment, has traditionally treated suicide as an intervening cause that breaks the causal link." Id., at 392.

exceptions, its factual situation differs greatly from the instant action and does not favor Plaintiffs' case.

The Ramírez case was not a result of medical malpractice. Instead, it involved a detainee that had been arrested by the Puerto Rico Police Department ("PRPD") and was being transferred to the police station. On the way, he jumped from the moving patrol car and then off the bridge the patrol car was crossing over. Unlike the present case, where the death by suicide occurred *after* the Hospital discharged Mr. Morales, the death by suicide in Ramírez occurred *while* the detainee was under the PRPD's custody and control.

The Puerto Rico Supreme Court in Ramírez went on to discuss the circumstances where a special duty obligates a particular party to be more vigilant, such as in a custodial setting, but nevertheless refused to impose liability, concluding the PRPD could not have foreseen that the suicide would occur. Thus, the conclusions to be drawn from Ramírez are the following: 1) damages in cases of death by suicide are the exception; 2) those exceptions are very rare; and 3) even in a custodial setting, where said custodian has a direct responsibility for the person, that exception might not apply. As such, the Ramírez case is inapposite because Mr. Morales took his life a day *after* being released from the Hospital and was not under the Hospital's custody or responsibility.

The same conclusion was reached by the Puerto Rico Supreme Court in Crespo v. Hato Rey Psychiatric Hospital, 114 D.P.R. 796 (1983), where a patient died by suicide following a sixty-nine (69) day stay at the clinic. During that time, the decedent had been examined eleven (11) times by four (4) different doctors and they had not identified any suicidal tendencies. Plaintiffs cite to this case to underline the duty a hospital has towards

its patients and how liability may ensue against the clinic if it was aware of such tendencies, as in the present case. However, that is as far as Crespo helps Plaintiffs as that Court also refused to impose liability on the psychiatric hospital. Admittedly, the Crespo Court did find that the patient there did not demonstrate suicidal tendencies, but at the same time it noted that "the hospital does not have the obligation to foresee all imaginable danger could conceivably threaten a patient's security. Only those risks that with some degree of probability could be foreseen by a reasonable and prudent man." Id., at 800.

Thus, while a heightened duty of care exists when the patient is in a custodial setting simply because the patient is under someone's care, as stated in Ramírez, that duty "does not guarantee absolute security to the person under its care" because that would entail absolute liability. Ramírez, 140 D.P.R. at 198. Crespo therefore does not stand for the proposition that responsibility can ensue against a clinic or other custodian when a person dies by suicide *outside* such a setting, as happened in the present case. Id., at 397. For this same reason, the remaining cases cited by Plaintiffs are distinguishable, insofar as they imposed responsibility due to a death by suicide while the decedent was under the direct care and supervision of a health institution. See Batista v. Clínica Dr. M. Juliá, 71 D.P.R. 823 (1950); Roses Artau v. Juliá García, 67 D.P.R. 518 (1947).

In contrast, in the present case there was no custodial setting as in Ramírez, and the decedent was not under medical supervision in a hospital or clinic when he decided to take his own life, as in Batista or Roses Artau. Had that been the factual scenario in the case at bar, the Court's conclusion today could be different. On the contrary, the intervening act did not occur while Mr. Morales was at the Hospital under medical

supervision, which included an evaluation by the emergency room physician and two (2) evaluations by a psychiatrist. The suicide occurred almost twenty-four (24) hours after Mr. Morales was found stable enough by a psychiatrist to be discharged and returned home, with instructions to follow up with his treating psychiatrist, as happened in Caraballo and Oquendo. The intervening cause, the act of the decedent taking his own life, broke the causal link and thus, no responsibility can lie against the hospital or the custodial agent. Ramírez, 140 D.P.R. at 392; Caraballo, 377 F.Supp.3d at 121.

The Court sympathizes with the factual scenario of this case. Nonetheless, the Court is bound by the precedents in Caraballo and Oquendo, and Plaintiffs point to no cases to enable the Court to reach a different result.

For all these reasons, the Article 1802 do not survive Defendants' Motion for Summary Judgment.

Finally, the Article 1803 vicarious liability claim against the Hospital is contingent on the Court finding liability against the individual doctors pursuant to Article 1802. Having found no viable cause of action under Article 1802, the vicarious liability claims against the Hospital cannot survive either.

## CONCLUSION

Based on the foregoing, Defendants' "Motion For Summary Judgment & Memorandum of Law in Support Thereof"(Docket No. 54) is GRANTED and Plaintiffs' claims under Articles 1802 and 1803 are DISMISSED WITH PREJUDICE.

Judgment shall be entered accordingly.

Case 3:18-cv-01911-CVR   Document 77   Filed 09/05/24   Page 16 of 16

Estate of Salvador Morales Orsini, et al, v. Doctors' Center Hospital, et al.
Opinion and Order
Civil 18-1911 (CVR)
Page 16
_____

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 5th day of September 2024.

                                                S/CAMILLE L. VELEZ-RIVE
                                                CAMILLE L. VELEZ-RIVE
                                                UNITED STATES DISTRICT JUDGE